# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

JAMAL SHAKIR,            )
                             )
      Movant,          )
                             )
v.                        )   **NOS. 3:17-cv-00001**
                             )        **3:17-cv-00002**
UNITED STATES OF AMERICA,   )
                             )
      Respondent     )

## MEMORANDUM OPINION

Jamal Shakir is a prisoner currently in the custody of the State of California awaiting transfer to the Federal Bureau of Prisons to serve ten consecutive life sentences plus twenty years for his federal convictions in two separate cases. He filed two pro se motions to vacate, set aside, or correct his federal sentences in those cases pursuant to 28 U.S.C. § 2255. (3:17-cv-00001, Doc. No. 1; 3:17-cv-00002, Doc. No. 1.) Although the Court appointed counsel to represent Shakir in both cases (3:17-cv-00001, Doc. No. 2; 3:17-cv-00002, Doc. No. 4), he has elected to proceed on his original pro se petitions and simply supplement them with exhibits. (3:17-cv-00001, Doc. Nos. 19–39; 3:17-cv-00002, Doc. Nos. 22–30, 32.)

Because both of Shakir's Section 2255 actions are impacted to some degree by a single plea agreement he entered in 2016, these cases—although not consolidated—are being briefed by the parties and addressed by the Court in joint, simultaneous filings in both cases to the extent appropriate. Due to the scope and complexity of this litigation, the government has proposed to address Shakir's claims in stages, with the first stage being limited to determining whether certain claims have been waived. The Court agrees with this approach. The parties have thoroughly

briefed the issue of waiver, and that issue is ripe for determination. (3:17-cv-00001, Doc. Nos. 46, 49, 53; 3:17-cv-00002, Doc. Nos. 40, 43, 45.)

## I.    PROCEDURAL HISTORY

On March 24, 2008, in Case No. 3:98-cr-00038-11 ("1998 case"), a jury convicted Shakir of the following crimes in violation of federal law: (Count 1) engaging in a continuing criminal enterprise; (Count 2) conspiring to distribute controlled substances and to intentionally kill or cause the killing of five people in furtherance of a continuing criminal enterprise; (Count 3) conspiring to use and/or carry firearms during and in relation to drug trafficking crimes and crimes of violence; (Counts 4, 9, 14, 31) conspiring to commit money laundering and three counts of money laundering; (Counts 5, 13, 16) three counts of using and/or carrying a firearm during and in relation to drug trafficking crimes and/or crimes of violence; (Counts 7, 10, 18, 19, 37) five counts of first-degree murder in furtherance of a continuing criminal enterprise or conspiracy to distribute drugs; (Counts 8, 11, 22, 23, 29, 39) six counts of using a firearm to cause death during and in relation to drug trafficking crimes and/or crimes of violence; (Counts 12, 30) two counts of knowingly using minors in drug trafficking; (Count 15) attempted robbery and extortion affecting commerce through the use of actual and threatened violence; (Count 17) using interstate commerce facility (interstate telephone system) to commit a crime of violence resulting in death; (Counts 20, 21, 38) three counts of unlawful killing to prevent communication of criminal activity to law enforcement; (Counts 24, 25, 26) three counts of firing a weapon into a group of people with the intent to intimidate, harass, injure, and maim, resulting in two deaths and grave risk to another life; (Count 32) possession of cocaine and cocaine base with intent to distribute; (Counts 40, 41) two counts of obstruction of justice. (3:17-cv-00001, Doc. No. 41-8.) The government sought the death penalty for eligible counts of conviction (3:98-cr-00038, Doc. No. 3239), but the jury was unable

to reach a unanimous decision regarding a death sentence. (3:17-cv-00001, Doc. No. 41-9.) The Court sentenced Shakir on December 7, 2009, to an effective term of ten consecutive sentences of life in prison, with fifteen additional life terms to run concurrently. (3:17-cv-00001, Doc. No. 41-10.)

In September 2014, while Shakir's appeal from the judgment in the 1998 case was pending in the United States Court of Appeals for the Sixth Circuit, Shakir and two members of his family—Robyn Shakir and Catherine Lumas—were indicted in Case No. 3:14-cr-00142 ("2014 case"). The charged conduct in this indictment involved crimes allegedly committed in 2008–09, during Shakir's incarceration for the 1998 case. (3:17-cv-00001, Doc. No. 42-1.) Specifically, the grand jury charged Shakir with: (Count 1) engaging in a continuing criminal enterprise; (Count 2) attempting to escape from custody; (Count 3) conspiring to commit robbery and extortion affecting commerce through the use of actual and threatened violence; and (Count 4) possessing a firearm in furtherance of a crime of violence. (Id. at 1–7.) Shakir, Robyn Shakir, and Lumas were charged in Count 5 with conspiring to distribute controlled substances. (Id. at 7–8.)

As the result of negotiations between the government and Shakir's attorneys dating back to at least 2012 (see 3:17-cv-00002, Doc. No. 22-1 at 5), the government and Shakir ultimately entered a plea agreement "intended to provide the global resolution of" both the 1998 case and the 2014 case. (3:17-cv-00001, Doc. No. 42-2 at 1.) The "basic terms" of the agreement were:

> (a) Defendant agrees to plead guilty to Count One in [the 2014 case]; (b) the parties agree the Court will impose a sentence of 20 years' imprisonment, to be served consecutively to all of his federal sentences in [the 1998 case]; (c) Defendant agrees to dismiss the pending appeal in [the 1998 case] and to waive his right to seek further appellate and/or post-conviction review, as set forth below; (d) the government agrees to dismiss the forfeiture allegation as well as Counts Two, Three, Four, and Five in [the 2014 case]; and (e) the government agrees to dismiss all charges in [the 2014 case] against Defendant's co-defendants, Robyn Shakir and Catherine Lumas. Appellate and other post-conviction waivers also apply as to both [the 2014 case] and [the 1998 case] as set forth below.

(3:17-cv-00001, Doc. No. 42-2 at 2.) On January 4, 2016, the Court accepted Shakir's petition to plead guilty to Count 1 of the 2014 case, sentenced him to twenty years on that conviction as agreed by the parties, and dismissed Counts 2–5 of the 2014 indictment. (3:14-cr-00142, Doc. No. 101; 3:17-cv-00001, Doc. Nos. 42-3, 42-4.)

Meanwhile, Shakir's appeal in the 1998 case had been stayed by the Sixth Circuit since February 25, 2015, on joint motion of the parties for the purpose of continuing settlement negotiations. (3:17-cv-00001, Doc. Nos. 43-4, 43-5.) On January 4, 2016—the same day the Court accepted Shakir's plea in the 2014 case—the Sixth Circuit granted Shakir's motion to voluntarily dismiss his appeal in the 1998 case. (3:17-cv-00001, Doc. Nos. 43-6, 43-7.)

On January 3, 2017, Shakir filed the pending Section 2255 motions collaterally challenging his sentences in both cases.

## II.     WAIVER DOCTRINE

Title 28 U.S.C. § 2255(a) provides relief for federal inmates who demonstrate that their "sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack."  But such collateral attacks are often waived in plea agreements, and the Sixth Circuit has long held that the knowing and voluntary waiver of a collateral attack is enforceable, including plea agreement waivers of rights under Section 2255. See, e.g., United States v. Toth, 668 F.3d 374, 377 (6th Cir. 2012) ("It is well settled that a defendant 'may waive any right, even a constitutional right, by means of a plea agreement.'"); Davila v. United States, 258 F.3d 448, 451 (6th Cir. 2001) (same).  However, a waiver of a collateral attack may be unenforceable "in cases where a defendant argues that his plea was not knowing or voluntary, or was the product of ineffective assistance of counsel" because

4

"it would be entirely circular for the government to argue that the defendant has waived his right to an appeal or a collateral attack when the substance of his claim challenges the very validity of the waiver itself." In re Acosta, 480 F.3d 421, 422 (6th Cir. 2007).

The second paragraph of Shakir's plea agreement—under the heading "Summary of the Agreement"—provided that Shakir "agrees to dismiss the pending appeal in [the 1998 case] and to waive his right to seek further appellate and/or post-conviction review, as set forth below." (3:17-cv-00001, Doc. No. 42-2 at 2.) The agreement later separately provided for specific waivers in connection with the 2014 case and the 1998 case, which the Court repeats in full here:

### Waiver of Appellate Rights in Case No. 3:14-cr-00142

21. Regarding the issue of guilt in Case No. 3:14-00142, Defendant hereby waives all (i) rights to appeal any issue bearing on the determination of whether he is guilty of the crime to which he is agreeing to plead guilty; and (ii) trial rights that might have been available if he exercised his right to go to trial. Regarding sentencing, Defendant is aware that 18 U.S.C. § 3742 generally affords a defendant the right to appeal the sentence imposed. Acknowledging this, Defendant knowingly waives the right to appeal any sentence within or below 240 months' imprisonment in Case No. 3:14-00142. **Defendant also knowingly waives the right to challenge the sentence imposed in Case No. 3:14-00142 in any collateral attack, including, but not limited to, a motion brought pursuant to 28 U.S.C. § 2255 and/or § 2241, and/or 18 U.S.C. § 3582(c). However, no waiver of the right to appeal, or to challenge the adjudication of guilt or the sentence imposed in any collateral attack, shall apply to a claim of involuntariness, prosecutorial misconduct, or ineffective assistance of counsel.** Likewise, the government waives the right to appeal any sentence within or above 240 months' imprisonment, so long as the sentence is imposed to run consecutive to all Defendant's other federal sentences.

### Waiver of Appellate Rights in Case No. 3:98-00038

22. Defendant is aware that he has a right to appeal his convictions and sentence in 3:98-00038 and is aware that he has exercised that right by prosecuting an appeal in Case No. 10-5019. Acknowledging this, Defendant knowingly waives the right to appeal his conviction and sentence in Case No. 3:98-00038. Accordingly, Defendant agrees to voluntarily dismiss with prejudice his pending appeal in Case No. 3:98-cr-00038/Case No. 10-5019, and further agrees not to seek to reinstate that appeal.

23. **Defendant also knowingly waives the right to challenge his convictions and/or sentence imposed in Case No. 3:98-00038 in any collateral attack, including, but not limited to, a motion brought pursuant to 28 U.S.C. § 2255**

**and/or § 2241, and/or 18 U.S.C. § 3582(c). However, no waiver of the right to challenge the adjudication of guilt or sentence imposed in any collateral attack shall apply to a claim of involuntariness, prosecutorial misconduct, or ineffective assistance of counsel, subject to the following exception: Defendant knowingly waives the right to raise in any collateral attack any claim of prosecutorial misconduct that was previously raised in his direct appeal, Case No. 10-5019.**

(<u>Id.</u> at 26–27) (emphasis added).

Much has been made of the complexity and sheer enormity of Shakir's criminal prosecution, and deservedly so; the Court's docket sheet alone for Shakir's 1998 case now spans 185 pages. <u>See</u> <u>United States v. Young</u>, 657 F.3d 408, 411 (6th Cir. 2011) (referencing prosecution of Shakir and his codefendants and stating that "[i]ts scope and duration place it among the largest and most complex federal prosecutions ever undertaken"). Determination of the discrete issue currently before the Court, however, turns on the relatively straightforward question of whether the waivers quoted above are enforceable in the pending collateral challenges.

### III. ANALYSIS

According to the government, the following six claims raised in Shakir's Section 2255 motions were waived in his plea agreement:

1. 1998 case Claim 2 – the trial court erred in instructing the jury ex parte during the first phase deliberations. (3:17-cv-00001, Doc. No. 1 at 57; Doc. No. 46 at 29.)

2. 1998 case Claim 3 – the jury instructions were contradictory, confusing, and duplicative, and diminished the government's burden of proof. (<u>Id.</u>, Doc. No 1 at 61; Doc. No. 46 at 29.)

3. 1998 case Claim 4 – Shakir was shuttled between federal and state custody prior to trial in violation of the Interstate Agreement on Detainers. (<u>Id.</u>, Doc. No. 1 at 73; Doc. No. 46 at 29.)

4. 1998 case Claim 5 – the prosecutor repeatedly committed misconduct during trial. (<u>Id.</u>, Doc. No. 1 at 82; Doc. No. 46 at 29.)

5. 1998 case Claim 8 – a witness's incompetence constitutes newly discovered evidence of actual innocence. (<u>Id.</u>, Doc. No. 1 at 108; Doc. No. 46 at 30.)

6

6. 2014 case Claim 2 – Shakir was shuttled between detention centers in violation of the Interstate Agreement on Detainers. (3:17-cv-00002, Doc. No. 1 at 37; Doc. No. 46 at 30.)

The government argues that each of these claims is included in the agreed waivers quoted above, and that they do not fall into any of the exceptions carved out of the waivers. Accordingly, the government asserts that these claims should be dismissed. (3:17-cv-00001, Doc. No. 46 at 31.)

Shakir, through counsel, does not dispute that these claims are covered by the terms of the plea agreement waivers. He argues, however, that the waivers in the plea agreement are not enforceable because he did not knowingly and voluntarily waive his claims, and that any waiver was the result of ineffective assistance of counsel. (3:17-cv-0001, Doc. No. 49.)

## A.      The Plea Hearing

First, Shakir argues that the record of the plea hearing does not support a finding that he knowingly and voluntarily waived his Section 2255 claims. (Id. at 2–5.) He asserts that, unlike the petitioner in Davila v. United States, 258 F.3d 448 (6th Cir. 2001), where waivers in a plea agreement were found to be enforceable, he is not an attorney and "had no specific and detailed colloquy regarding the meaning of the § 2255 waivers with the district court." (Id. at 3.) Shakir suggests that his plea hearing did not satisfy the requirement of the Federal Rules of Criminal Procedure that courts "inform the defendant of, and determine that the defendant understands . . . the terms of any plea-agreement provision waiving the right to appeal or to collaterally attack the sentence." (Id. at 2 (quoting Fed. R. Crim P. 11(b)(1)(N)).)

At his January 2016 plea hearing, Shakir was sworn in and expressly advised by the court that everything he said would be under oath and could be used against him, which he said he understood. (3:17-cv-00001, Doc. No. 42-4 at 2–3.) During the hearing, the Court engaged in the following colloquy with Shakir:

THE COURT: Regarding the issue of guilt in this [2014] case, you are waiving your rights to appeal any issue bearing on the determination of whether or not you are guilty of Count One, the count you're pleading guilty to. You're waiving your right to appeal the denial of any trial rights that might have been available, had you elected to go to trial.

You're also waiving your right to appeal any sentence within or below 240 months in prison. Also knowingly waiving the right to challenge the sentence imposed in this case in any collateral attack.

However, these waivers do not apply if you claim that your plea today is involuntary, the prosecutor has engaged in prosecutorial misconduct or your lawyer has rendered you ineffective assistance of counsel. Likewise, the government is waiving its right to appeal any sentence within or above 240 months in prison, so long as the sentence is imposed to run consecutive to all other federal sentences.

You're also waiving your right to appeal your conviction and sentence in [the 1998 case], the earlier case. You're agreeing to voluntarily dismiss with prejudice the pending appeal in that case, and further agree not to seek to reinstate that appeal. Do you understand that?

THE DEFENDANT: Yes.

THE COURT: You're also knowingly waiving the right to challenge your conviction and sentence imposed in the earlier case in any collateral attack. However, again, these waivers do not apply if you claim that your plea today is involuntary or the prosecutor has engaged in prosecutorial misconduct or your lawyer has rendered you ineffective assistance of counsel, subject to the following exception:

You are knowingly waiving your right to raise in any collateral attack any claim of prosecutorial misconduct that was previously raised in your direct appeal of the earlier case. Do you understand that?

THE DEFENDANT: Yes, ma'am.

(3:17-cv-00001, Doc. No. 42-4 at 22–23.)

Shakir asserts that this "mention" of the waivers by the Court was "without any explanation or questioning of Mr. Shakir as to his understanding." (3:17-cv-00001, Doc. No. 49 at 4.) But he does not explain how the language used in the plea agreement or by the Court could have been any clearer about what he was waiving, or why the Court's repeatedly asking him "Do you understand that?" and his responses—under oath—of "Yes" and "Yes, ma'am" were not sufficient to establish his understanding.

Instead, Shakir focuses on an unrelated portion of the colloquy in which some confusion arose about the order in which Shakir would serve his multiple prison sentences. (See 3:17-cv-00001, Doc. No. 49 at 3–4; Doc. No. 42-4 at 11–18.) Page 2 of the plea agreement expressly provided that "the parties agree the Court will impose a sentence of 20 years' imprisonment, to be served consecutively to all of [Shakir's] federal sentences in [the 1998 case]." (3:17-cv-00001, Doc. No. 42-2 at 2.) But in a footnote appended to that text, the agreement stated that Shakir was then serving a prison sentence on a State of California conviction and that he acknowledged and would not challenge the applicability of 18 U.S.C. § 3585, which governs when a federal sentence begins to run. (Id. at 2 n.1.) During the plea colloquy, the Court asked counsel about the meaning of that footnote. (3:17-cv-00001, Doc. No. 42-4 at 11–12.) Counsel explained that the effect of the referenced statute would be to make Shakir's new sentence consecutive to the California sentence as well as the federal sentence in the 1998 case, and that the defense had not wanted that stated in the agreement "in plain English" because it might jeopardize Shakir's eligibility for certain programs in the California prison. (Id. at 12–13.) Shakir said that he understood the footnote "to a degree," and made further comments to the effect that he understood the consecutive nature of the sentences but not why the footnote was worded the way it was. (Id. at 14–15.)

This led to more discussion about in what order Shakir's sentences would run, with the Court at one point misstating the sequence of the sentences by saying Shakir's sentence on "this case" would start when his state sentence ended. (Id. at 17.) Counsel for the government quickly corrected that impression, reiterating that the plea agreement provided that the sentence for the 2014 case would be consecutive to the sentence for the 1998 case. (Id. at 17–18.) The Court then explained:

> I get it. So as soon as you are released from state custody, the sentence in the earlier case, the 98 federal case will begin. And then if that – when that sentence is over,

if it ever is, then your sentence on this case will come. So I misspoke myself by flipping them.

(Id. at 18.) Shakir agreed that he understood that to be the sequence of his sentences, and, at the Court's urging, repeated that when his state sentence was "over with," then the sentence on "[t]he original federal case" would begin, followed by the new sentence. (Id.)

The Court reserves judgment for now on the matter of whether and when Shakir understood the consecutive nature of his new sentence, because that issue remains to be litigated. But it is clear from this portion of the transcript that the brief confusion on that point at the hearing was triggered by some intentionally vague language in the plea agreement and had nothing whatsoever to do with the appellate waivers in the agreement or Shakir's understanding of them as expressed at the hearing. Accordingly, the Court does not credit Shakir's argument that this brief, limited confusion about a matter unrelated to his waivers renders his appellate waivers unknowing or involuntary.

## B.    Ineffective Assistance

Shakir next asserts that "surrounding circumstances and legal advice given to Mr. Shakir" establish that his waivers were not knowing and voluntary. (3:17-cv-00001, Doc. No. 49 at 5–11.) He argues, correctly, that ineffective assistance of counsel is grounds for finding appellate waivers unenforceable. See United States v. Flowers, 428 F. App'x 526, 530 (6th Cir. 2011) ("A waiver of appeal rights may be challenged on the grounds that it was the product of ineffective assistance of counsel.") He asserts that the waivers in this case were the unenforceable product of ineffective assistance because he "was advised by appellate counsel Sean O'Brien that he could not be made to waive [] § 2255 rights in a plea agreement." (3:17-cv-00001, Doc. No. 49 at 8.)

"Defendants have a Sixth Amendment right to counsel, a right that extends to the plea-bargaining process." Lafler v. Cooper, 566 U.S. 156, 162 (2012). All federal claims of ineffective

assistance of counsel are subject to the highly deferential two-prong standard of <u>Strickland v. Washington</u>, 466 U.S. 668 (1984), which asks: (1) whether counsel was deficient in representing the defendant; and (2) whether counsel's alleged deficiency prejudiced the defense so as to deprive the defendant of a fair trial. <u>Id.</u> at 687.  To meet the first prong, a petitioner must establish that his attorney's representation "fell below an objective standard of reasonableness," and must overcome the "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that . . . the challenged action 'might be considered sound trial strategy.'" <u>Id.</u> at 688–89.  The "prejudice" component of the claim "focuses on the question of whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair." <u>Lockhart v. Fretwell</u>, 506 U.S. 364, 372 (1993).  Prejudice, under <u>Strickland</u>, requires showing that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." <u>Strickland</u>, 466 U.S. at 694.  "A reasonable probability is a probability sufficient to undermine confidence in the outcome." <u>Id.</u>

The <u>Strickland</u> test applies to "challenges to guilty pleas based on ineffective assistance of counsel." <u>Hill v. Lockhart</u>, 474 U.S. 52, 58 (1985).  When a petitioner claims that "ineffective assistance led to the improvident acceptance of a guilty plea," the prejudice prong of <u>Strickland</u> requires him to "show 'that there is a reasonable probability that, but for counsel's errors, [the defendant] would not have pleaded guilty and would have insisted on going to trial.'" <u>Lafler</u>, 566 U.S. at 163 (quoting <u>Hill</u>, 474 U.S. at 59).  The Supreme Court has explained what a heavy burden a petitioner bears in such circumstances:

> "Surmounting <u>Strickland</u>'s high bar is never an easy task," <u>Padilla v. Kentucky</u>,
> 559 U.S. 356, 371 (2010), and the strong societal interest in finality has "special
> force with respect to convictions based on guilty pleas." <u>United States v. Timmreck</u>,
> 441 U.S. 780, 784 (1979).  Courts should not upset a plea solely because of post

hoc assertions from a defendant about how he would have pleaded but for his attorney's deficiencies. Judges should instead look to contemporaneous evidence to substantiate a defendant's expressed preferences.

Lee v. United States, 137 S. Ct. 1958, 1967 (2017).

Shakir relies on a series of three contemporaneous letters between himself and counsel to support his claim that counsel gave him erroneous advice about the meaning of the appellate waivers in his plea agreement. The first letter is from Shakir to Julie Hall, one of his trial and appellate attorneys in the 1998 case, and is dated August 27, 2015—just over three months before Shakir signed the consent to dismiss his appeal in the 1998 case under the terms of the plea agreement. (3:17-cv-00002, Doc. No. 30-1 at 1–4, 10.) In the letter, Shakir raised "some deep concerns" he had about the proposed plea agreement after an August 21 visit from Jason Gitchner, his attorney in the 2014 case, to review the proposal. (Id. at 2.) The relevant portions of that letter are as follows:

> The first issue that has me confused, is the post-conviction aspect of my original case that I'm on direct appeal on, and in which the Government is seeking to have me dismiss. As you know, from the very beginning, I in no way wanted to waive my constitutional rights to appeal all of the convictions from my original case, and this is still the case. I went to trial on that case, and to my understanding, the Constitution ensures that I can pursue my appeal and Habeas petition should the direct appeal fails. I don't understand how [Assistant United States Attorney] Sunny Koshy under the guise of acting on behalf of the Government can hold my family members hostage as bargaining chips and demand that I surrender or withdraw my direct appeal in order to free the women in my family of what amounts to be trumped-up charges of some incidents that are alleged to have happened 6-years ago. It is my entire position that these present charges were brought forth with the sole purpose of stripping me of my constitutional rights of appealing the faulty convictions and actions by the Government. In response to my concerns, you and Sean advised me that my issues are still preserved, I'm simply withdrawing the direct appeal, skipping that level and getting directly to the 2255 where I can broaden the scope of my issues and make a better showing of all my issues. You guys advised me that my issues are not constitutionally waivable. That my Interstate Agreement on detainers issue; the Judge instructing the Jury out of our presence; the flawed jury instructions; prosecutional [sic] misconduct etc. CAN NOT be waived by withdrawing my direct appeal, that in my 2255 I can raise all of these issues in a broader and more effective manner.

Upon reading that proposed plea by the Government, I became more confused. I'm clueless to the law, so it may just be a case of me not understanding how this all works. But it seems that the plea agreement is saying that I'm waiving all post-conviction claims and or arguments, with the exception of some vague issues limited to prosecutorial misconduct, ineffective assistance of counsel, and involuntariness (whatever that means).

. . . But I want to make it clear that if I am in any way waiving my relevant issues that took place before, during, and after my trial, then I reject this plea offer for now and forever more. If I can still raise these issues on my writ of habeas corpus, then and only then, am I open to withdrawing my direct appeal.

. . . The bottom line is, I will agree to withdraw the appeal-brief on direct, only if my issues are still preserved to be raised on my 2255 habeas, and only if this is the case!

(<u>Id.</u> at 2–4.)

The second letter, dated September 12, 2015, is from Sean O'Brien, another of Shakir's appellate attorneys in the 1998 case, to Shakir. O'Brien does not mention Shakir's letter to Hall, but begins simply, "I understand your concerns about the waiver language in your plea agreement." (<u>Id.</u> at 6.) O'Brien then quotes waiver language that is materially the same as the language that wound up in the final plea agreement and provides the following relevant advice:

We have talked about the nature and scope of waivers, and I am writing to further explain that in my opinion, you cannot be made to waive a 2255 motion. Under the law, waivers must be knowing, voluntary and intelligent. <u>Johnson v. Zerbst</u>, 304 U.S. 458, 467 (1932); <u>Von Moltke v. Gillies</u>, 332 U.S. 708 (1948). Although these are old cases, they announce solid principles that have not been questioned or limited in subsequent cases. In a nutshell, you cannot waive what you don't know about. If new evidence surfaces that you presently are unaware of, and that evidence supports a claim that your plea, trial, convictions or sentences are illegal or unconstitutional, it is legally impossible for this agreement to waive such claims. The same is true with respect to claims of ineffective assistance of counsel; you cannot waive your right to the effective assistance of counsel under the <u>Von Moltke</u> decision. If you discover that you have been incorrectly advised by your lawyers, you can definitely challenge that on habeas corpus. <u>See</u>, <u>e.g.</u>, <u>Padilla v. Kentucky</u>, 130 S. Ct. 1473 (2010).

The plea agreement specifically provides that "no waiver of the right to challenge the adjudication of guilt or the sentence imposed in any collateral attack shall apply to a claim of involuntariness, prosecutorial misconduct, or ineffective assistance of counsel . . ." This is because of what we explained in the previous paragraph: the Government knows that some things simply cannot be waived. Mr. Koshy and

[Assistant United States Attorney] Mr. Vandevender said as much during plea negotiations when this waiver question first came up.

I hope this helps you make this very weighty decision.

(Id. at 7.)

Shakir later wrote to O'Brien in a letter dated November 10, 2015, which contained the following pertinent text:

I know that we have been discussing these issues surrounding the potential plea extensively, and I don't mean to be a constant bother, but there are still some things that I just can't get comfortable with because it still seems unclear.

As you know, I'm not interested in waiving any of my issues where I can't successfully raise them in a 2255. You and Julie have went over the language of the plea with me numerous times now, and you continue to ensure me that the legal issues and claims that concern me are not waivable. And in our last conversation, you told me that if Sonny Koshy wants to believe they are waived because of the terminology in the pleas let him, because he is wrong in his assumption. The second part of your reasoning with me was, even if a couple of the claims were found to be waived, they are not winnable issues anyway. The prime example was the claim of the Judge instructing the jury out of the presence of me and my attorneys. I know you said you were just stating "if found to be waived," just for the sake of argument, but still it hasn't been sitting right with me, because in one breath you are saying the issues are not waivable because they can all be expanded, and in the second breath you are saying the issues if found to be waived are not claims I could win on anyway.

I know that in your last letter you did your best to try and clarify things for me, as you did in our phone conversations as well. But I'm still unsure of how what you tell me contrast with the language in the plea. The plea itself concerns me.

(Id. at 8.)

Taken alone and out of context, O'Brien's advice to Shakir about the appellate waivers was inartfully drafted, at best. The bald statement that "you cannot be made to waive a 2255 motion" is objectively inaccurate. Even if that statement was qualified by O'Brien's reference to claims based on new evidence or ineffective assistance, as the government argues it was (3:17-cv-00001, Doc. No. 53 at 9), the advice was still suspect.[1] See, e.g., Davila v. United States, 258 F.3d 448,

---

[1] As the Government correctly observes (see 3:17-cv-00001, Doc. No. 53 at 9), O'Brien's advice regarding the impact of waivers on claims based on new evidence or ineffective assistance is not

451 (6th Cir. 2001) (holding that knowing and voluntary "waiver effectively foreclosed [petitioner's] right to bring a § 2255 petition based on the claim of ineffective assistance of counsel"); <u>United States v. Ross</u>, 245 F.3d 577, 585 (6th Cir. 2001) (holding that appellate waiver in sentencing agreement "operates to bar a post conviction claim based on newly discovered evidence"); <u>Muntasir v. United States</u>, No. CV 15-754 (KM), 2018 WL 1446406, at *12 (D.N.J. Mar. 22, 2018) ("Furthermore, the Court is unaware of any precedent creating an exception to [the] enforceability [of appellate waivers] when a litigant has received newly discovered evidence. *A fortiori* new evidence of known claims (which is what [petitioner] seems to have had in mind) will not undermine a waiver.").

But even assuming deficient performance by O'Brien, Shakir cannot demonstrate any prejudice arising from counsel's bad advice. The Sixth Circuit found a plea agreement enforceable in a case in which there was even stronger evidence that counsel had given the petitioner inaccurate advice about the consequences of the plea. <u>Ramos v. Rogers</u>, 170 F.3d 560 (6th Cir. 1999). Specifically, plea counsel in <u>Ramos</u> testified at a post-conviction hearing that he had mistakenly believed that the petitioner would be eligible for a certain type of probation and had "promised" the petitioner that he would be granted such probation after one year if he pleaded guilty, and both counsel and the petitioner averred that the petitioner's agreement to plead guilty was based on that assurance. <u>Id.</u> at 562–63. Despite finding the petitioner's claim "very troubling," the Sixth Circuit held that the "trial court's proper colloquy can be said to have cured any misunderstanding [the petitioner] may have had about the consequences of his plea." <u>Id.</u> at 565, 566. The court summarized the relevant portion of the petitioner's colloquy as follows:

---

material to this case because the waiver's in Shakir's plea agreement expressly carved out ineffective assistance claims and none of his claims is based on new evidence.

> [The trial judge] asked [the petitioner], "Do you understand that [rape] is not a probationable offense, that you are not going to receive probation under any circumstances?" [The petitioner] replied, "Yes, Your Honor." The judge asked if any promises had been made to the petitioner in order to get him to plead; [the petitioner] answered, "No."

Id. at 564. The Sixth Circuit determined that, through that exchange, the trial court had "specifically informed the defendant that his counsel's advice was incorrect," id. at 565, and that the petitioner's claim that he pleaded guilty based on counsel's faulty advice could not establish prejudice in those circumstances:

> In other words, [the petitioner] wants us to rely on his alleged *subjective* impression of what the plea bargain was, rather than the bargain actually outlined *in the record*. The record in the case indicates that [the petitioner] responded negatively (and, he wants us to believe, *untruthfully*) to a judge's inquiry as to whether any promises had been made to him in order to get him to so plead.

> If we were to rely on [the petitioner's] alleged subjective impression rather than the record, we would be rendering the plea colloquy process meaningless, for any convict who alleges that he believed the plea bargain was different from that outlined in the record could withdraw his plea, despite his own statements during the plea colloquy (which he now argues were untruthful) indicating the opposite. This we will not do, for the plea colloquy process exists in part to prevent petitioners . . . from making the precise claim that is today before us. "[W]here the court has scrupulously followed the required procedure, the defendant is bound by his statements in response to that court's inquiry."

Id. at 566 (emphasis in original; citation omitted); see also United States v. Pola, 703 F. App'x 414, 423 (6th Cir. 2017) ("The plea hearing colloquy also reveals that Pola understood, notwithstanding his attorney's questionable advice [about the terms of the agreement]. When an ineffective-assistance claim is based on misleading information regarding the consequences of a plea, a proper plea colloquy is generally deemed to cure any misunderstanding the defendant may have had about the consequences of the plea.")

The rationale of Ramos is especially applicable where the term of a plea agreement about which a petitioner claims to have been misled by counsel is "unambiguous on its face." McAdoo v. Elo, 365 F.3d 487, 497 (6th Cir. 2004). In McAdoo, the petitioner claimed that, based on advice

from counsel, he believed that the concurrent life sentences he accepted in his plea agreement were actually twenty-year sentences. Id. at 496. The Sixth Circuit rejected that argument:

> [A]s in Ramos, we hold that a term that is unambiguous on its face and agreed to by the defendant in open court will be enforced. We note that the term "life sentence" is not ambiguous. The United States Constitution does not require judges to explain the meaning of "life sentence" and other unambiguous terms during the plea colloquy in order to combat alleged misinformation that is not revealed on the record. McAdoo acknowledged in court under oath that he was agreeing to a life sentence, and the evidence and his unsworn statement presented to the state court failed to show that he reasonably believed he was actually agreeing to a maximum sentence of only twenty years.

Id. at 497 (internal citations omitted).

Although these cases involved ineffective assistance with regard to other provisions of a plea agreement, the rule espoused by Ramos—that a proper plea colloquy forecloses any claim of prejudice from counsel's deficient advice—applies equally to allegations of ineffective assistance concerning waiver provisions. See Dempsey v. United States, No. 1:14-cv-01349, 2018 WL 1189876, at *4–6 (E.D. Tenn. Mar. 7, 2018) (finding any misunderstanding about the scope of plea agreement waiver was cured during colloquy); United States v. McKnight, No. 15-cv-13232, 2016 WL 3087702, at *2–3 (E.D. Mich. June 2, 2016) (same). And again, this is especially true when the "point of alleged confusion" about the meaning of a waiver is addressed in "plain English" in the plea agreement:

> Although Defendant might not have known exactly what the statutory citation of § 2255 meant, he, at the very least, knew that it was a 'post-conviction proceeding' that 'contest[s] his conviction.' Plea Agreement at 10. The claims that Defendant seeks to raise in his motion . . . are foreclosed by these simple statements.

McKnight, 2016 WL 3087702, at *3 (emphasis in original). Accordingly, a defendant's alleged confusion about clear text is outweighed by his testifying that he understands the text during his plea colloquy:

Second, and more importantly, Defendant's on-the-record assertions, made under oath, flatly belied this type of purported confusion. Because Defendant argues that "28 U.S.C. § 2255" was confusing on its face, the nature of Defendant's purported confusion is such that he would have had questions upon reading the plea agreement in the first instance. He was given several opportunities to ask questions about the terms of the plea agreement, including the meaning of § 2255, but he repeatedly asserted that he understood everything in it. A trial court's proper plea colloquy cures any misunderstandings that a defendant may have about the consequences of a plea. Ramos v. Rogers, 170 F.3d 560, 565 (6th Cir. 1999); see also Boyd v. Yukins, 99 F. App'x. 699, 703 (6th Cir. 2004). Accordingly, on these facts and as the claim is articulated by Defendant, he cannot now take back his assertion that the waiver was knowing and intelligent.

McKnight, 2016 WL 3087702, at *3 (citations to the record omitted).

The facts of this case are materially similar to those of the cases discussed above. As in Ramos, there is some evidence that Shakir was poorly advised by counsel about the scope of the waivers in the plea agreement. But as in McAdoo and McKnight, the language in question is crystal clear. And in the portion of Shakir's plea colloquy quoted above, the Court clearly spelled out the appellate waivers in his agreement and the limited exceptions to them and asked if Shakir understood them. He said unequivocally that he did.[2] Pursuant to Ramos, this exchange "foreclosed" any argument that Shakir was relying to his detriment on advice that was contrary to what was plain from the record and the text of the plea agreement. Pola, 703 F. App'x at 423 ("The court's proper advisement of rights is thus deemed to "foreclose" any showing of actual prejudice attributed to counsel's erroneous advice, because the defendant is deemed bound by his statements in response to the court's inquiry. Otherwise, the plea colloquy process would be rendered meaningless if a defendant could reopen the record by later asserting that actually, he misunderstood.") (citing Ramos).

---

[2] Significantly, he did so just minutes after voicing confusion about a different section of the agreement, dispelling any theory that he felt somehow constrained to simply agree with everything the Court articulated.

Even if the Court were to delve further into the issue of prejudice, the exchange of letters on which Shakir relies undercuts his claim of prejudice in several ways. First, the letters demonstrate that the plea agreement and the waivers in particular were the subject of multiple discussions between Shakir and his counsel in person, by phone, and by letter. This negatively highlights Shakir's reliance on the limited sampling of advice from one of three attorneys who were advising him about the plea agreement. The Government correctly observes that the affidavit offered by Shakir of Jason Gichner, who represented Shakir in the 2014 case and acknowledges having "reviewed the plea agreement" with him, is curiously silent regarding the advice Gichner gave him about the enforceability of appellate waivers. (3:17-cv-00001, Doc. No 53 at 8–9; Doc. No. 49-1.) Gichner testifies that he deferred to O'Brien and Hall "on the effect this plea would have" on the 1998 case, but the appellate waivers applied to both cases. (Id., Doc. No. 49-1 at 1.) Shakir has not offered affidavits from O'Brien or Hall about the totality of their advice about the waivers, or provided any affidavit of his own to the effect that he believed, based on advice from counsel, that the waivers were unenforceable.[3] To the contrary, Shakir's contemporaneous letters indicate that he was well aware and intently focused on the plain language of the plea agreement was contrary to any suggestion that he was not waiving his right to challenge his convictions or sentences.

It is also evident from the letters that Shakir's position about what was acceptable to him in a plea agreement changed significantly between the time of that correspondence and his signing

---

[3] Shakir has not requested an evidentiary hearing on the threshold question of ineffective assistance with regard to the validity of his waivers. (See 3:17-cv-00001, Doc. No. 49 at 16 (asking the Court to find that he has not waived any issues and to "thereafter hold an evidentiary hearing on the merits" of his claims).) Regardless, the Court would not find a hearing to present testimony about counsel's performance warranted because it is clear from the record that Shakir cannot establish prejudice from that performance.

of the plea agreement. For example, in one of his letters to counsel, Shakir wrote that he had "thought long and hard" about which count of the 2014 indictment he was "willing to plea to," and that "the C.C.E. is not satisfactory," so "it will have to be either the Hobbs Act Robbery, or the drug conspiracy." (3:17-cv-00002, Doc. No. 31-1 at 9.) And yet he ultimately agreed to plead guilty and did plead guilty to Count One: conspiracy and attempt to engage in a Continuing Criminal Enterprise, the very count he had insisted was "not satisfactory." (3:17-cv-00001, Doc. No. 42-2 at 3; Doc No. 42-3 at 1; Doc. No. 42-4 at 49–51.) Accordingly, that Shakir was initially opposed to waiving Section 2255 claims while the plea agreement was being negotiated does not prove that his later agreement to the waivers was unknowing or involuntary. He might simply have changed his mind and acquiesced to the waivers for the same reason he agreed to plead guilty to the continuing-criminal-enterprise count: it was the only way to get the deal. (See 3:17-cv-00002, Doc. No. 22-1 at 30–31 (reflecting the government's insistence that Shakir plead guilty to "the CCE count").)

That Shakir simply changed his mind is also supported by another letter he wrote while his plea agreement was being negotiated. On October 20, 2015, Shakir wrote to Tennessee Attorney General Herbert Slatery to complain about what he characterized as AUSA Koshy's misconduct in using other people as "leverage" in a "last ditch attempt at depriving [Shakir] of [his] constitutional rights," including forcing him to drop his appeal of the 1998 case. (3:17-cv-00001, Doc. No. 29-1 at 4.) He equated the government's efforts to "force [him] to forfeit [his] appeal rights" with "extortion and kidnap for ransom," and wrote that he did "not in any way want to forfeit [his] constitutional rights to an appeal on the original case, or trial on the current case," but that he was "between a rock and a hard place." (Id. at 5.) He wrote that the Attorney General was "the last hope to correct what is happening before [he had] to involuntarily sign [his] life and rights

away because [he had] no other recourse to save [his] family." (Id. at 6.) But despite those misgivings, Shakir ultimately did forfeit his right to trial in the 2014 case, and changed his mind about the count to which he was willing to plead guilty. The most plausible interpretation of the record is that Shakir also changed his mind about the waivers in the face of the reality he describes.

Accordingly, Shakir cannot demonstrate prejudice as required by Strickland and fails to carry his burden of demonstrating that his waivers are invalid due to ineffective assistance of counsel.

## IV.    CONCLUSION

For the reasons set forth above, the Court finds that the appellate waivers in Shakir's plea agreement are valid and enforceable. An appropriate Order shall enter.


_____
WAVERLY D. CRENSHAW, JR.
UNITED STATES DISTRICT JUDGE